```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                   EASTERN DIVISION
```

LONNIE EUBANKS                                           PLAINTIFF

VS.                         CIVIL ACTION NUMBER: 4:06CV24TSL-LRA

THE GEO GROUP, INC.                                     DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

    This cause is before the court on the motion of defendant The GEO Group, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff Lonnie Eubanks has responded in opposition to defendant's motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendant's motion is well taken and should be granted.

    Defendant GEO (formerly Wackenhut Corrections Corporation) is a private company that operates correctional facilities, including the East Mississippi Correctional Facility (EMCF).  Plaintiff Lonnie Eubanks, who was formerly employed by GEO, has brought this action against GEO for malicious prosecution relating to a charge of grand larceny brought against him by GEO arising from his alleged theft of medications belonging to GEO.  The basic facts are largely undisputed.

    On October 28, 2003, as plaintiff was leaving the prison at the end of his shift, he was stopped at a security checkpoint and

his lunch container was searched, revealing a large quantity of primarily psychotropic medications (both prescription and non-prescription). Plaintiff's supervisor, Sandra Atwood, Health Services Administrator at the prison, was called to the security checkpoint when the medications were found; she confirmed that the medications came from the prison and were owned by GEO, a fact which plaintiff does not dispute.[1] Plaintiff had the medications in his possession with the intention of taking them out of the prison, but he claimed that he intended to bring them back so that they could be administered to prisoners.[2]

The following day, Dennis Johnson, a GEO employee responsible for investigating the incident, appeared before a justice court judge and signed an affidavit for an arrest warrant. A warrant was issued, and plaintiff was arrested on a charge of grand

---

[1] The day before plaintiff was stopped, another nurse at the facility, David Ezell, had called Sandra Atwood at her home and told her he had seen Eubanks take a plastic container out of his lunch satchel that had medications in it. In response to Ezell's call, Atwood contacted GEO's security investigator, Inspector Rivera, and asked him to investigate. It was at Rivera's instance that plaintiff was stopped and searched, and the medications found.

[2] Eubanks has explained that the medications in his possession had been refused by prisoners or otherwise discarded and were kept by him so that they could be administered to other prisoners rather than being thrown away, which is what would otherwise have happened to them. Atwood has testified that she was aware that nurses would sometimes keep discarded pills so that they could be given to other prisoners rather than being flushed down the commode or otherwise disposed of, which is what Atwood stated should been done with them.

larceny.  Subsequently, an investigation was undertaken by Tommy Anderson, an investigator in the Lauderdale County Sheriff's Office.  In March 2004, after presentation of evidence by Anderson, a grand jury requested additional investigation.  Later, during August 2004, the case was presented to a second grand jury, which returned an indictment against plaintiff for grand larceny.  However, just before the case was set to go to trial, the charge was nolle prossed on motion of the prosecutor "due to lack of sufficient evidence."  Following dismissal of the charge, plaintiff filed this present action against GEO for malicious prosecution.

To prevail on a claim of malicious prosecution, plaintiff must prove the following elements by a preponderance of the evidence: (1) the institution or continuation of original judicial proceedings, either criminal or civil; (2) by, or at the insistence of the defendants; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of.  Hudson v. Palmer, 977 So. 2d 369, 381 (Miss. Ct. App. 2007) (citing Cong Vo Van v. Grand Casinos of Miss., Inc., 767 So. 2d 1014 (Miss. 2000)).  GEO concedes plaintiff can prove elements (3) and (6) of his claim but maintains plaintiff cannot prove the remaining four elements.

As to the first two elements, GEO contends that while its employee Dennis Johnson did request that a felony charge be pressed against plaintiff, GEO did not institute the criminal proceeding or insist that the criminal proceeding be continued but rather merely provided information to the Sheriff's Department, whose investigator made the decision to pursue charges against plaintiff.  GEO contends, moreover, that there was undeniably probable cause, as demonstrated conclusively by the fact of the arrest warrant issued by an independent magistrate, and the grand jury indictment.  Finally, it insists that plaintiff has no evidence that GEO acted with malice.

Contrary to GEO's characterization, its employee, Dennis Johnson, did not merely request that charges be pressed against plaintiff; rather, after conducting an investigation, he took the information he had gathered to the Sheriff's Office, told the investigator he wanted Eubanks prosecuted, and appeared before the justice court judge and signed an affidavit for the issuance of an arrest warrant.  The Mississippi Supreme Court has held that the elements of instituting a criminal proceeding by or at the insistence of the defendant is satisfied if the defendant signs an affidavit charging an offense.  See Royal Oil Co. v. Wells, 500 So. 2d 439, 443 (Miss. 1986) (finding that the defendants "instituted the criminal proceeding against [the plaintiff] by swearing out an affidavit charging her with embezzling $1.53 which

4

belonged to Royal Oil Company and obtaining a warrant for her arrest on that charge from the Justice Court Judge."); Page v. Wiggins, 595 So. 2d 1291, 1292 (Miss. 1992) (stating that, "[o]bviously, there was institution of criminal proceedings against Page, by, or at the instance of, Wiggins who executed an affidavit against Page. . . ."); see also Mississippi Gaming Com'n v. Baker, 755 So. 2d 1129, 1134 (Miss. Ct. App. 1999) (holding that "[b]y signing the affidavits, [the defendant] certainly can be charged with commencing the action that led to [the plaintiff's] arrest.").

Notwithstanding this, GEO seems to take the position that because it was not involved in the decision to further pursue the charges by seeking an indictment against Eubanks, then plantiff cannot establish "the institution or continuation of original judicial proceedings . . . by, or at the insistence of the defendant."  While the Mississippi courts have held that swearing out a criminal affidavit against another constitutes instituting criminal proceedings, they have also held that "[n]o liability, as for malicious prosecution, attaches merely by reason of . . . the fact that one's name was . . . signed to an information or complaint prepared on an independent investigation by the prosecutor." Downtown Grill, Inc. v. Connell, 721 So. 2d 1113, 1117-1118 (Miss. 1998).  Further, the Mississippi Supreme Court has explained that a party cannot be found to have instigated

5

criminal proceedings where he merely provided what he believed to be accurate information to prosecuting authorities and then left to the authorities the decision whether to prosecute. See id. ("If the defendant merely states what is believed, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding.") (quoting W.Page Keeton et al., Prosser and Keeton, on the Law of Torts § 119 at 872-73 (5th ed. 1984)). But cf. Godines v. First Guar. Savs. & Loan Ass'n, 525 So. 2d 1321, 1325 (Miss. 1988) (stating that "merely providing accurate information to police may not be instigation, [but] knowingly giving false information may be an attempt to influence the officer's judgment in deciding whether to effect an arrest [and] may be enough to hold the informer liable.").

In the case at bar, Investigator Tommy Anderson has provided an affidavit in which he declares that he made the decision to pursue charges against Eubanks, and that this was done without input from GEO. Anderson claims that when Dennis Johnson first came to him with the investigative materials he had gathered regarding Eubanks' alleged theft, Johnson told Anderson he wanted charges pressed against Eubanks. After reviewing the investigative materials presented by Johnson, Anderson prepared an

6

affidavit for Johnson to present to the justice court judge for the issuance of an arrest warrant. Anderson states that he did not accompany Johnson to the judge to get the arrest warrant, and that Johnson went alone. A warrant was issued and plaintiff was arrested. Following plaintiff's arrest, Anderson undertook his own investigation of the incident. Among other things, Anderson conducted an "extensive interview" of plaintiff, in which plaintiff claimed he was not stealing the medications in question but rather was attempting to keep them from being thrown away and planned to bring them back into the prison to provide them to inmates; plaintiff provided a handwritten statement to this effect. Anderson maintains that he alone made the decision to present the charge of grand larceny to the grand jury, after reviewing the facts of his investigation and concluding there was sufficient evidence to present the charge. He maintains that no one insisted that the charge against Eubanks be presented to the grand jury, and that no one encouraged him to present the charge to the grand jury.

While it is apparent from this evidence, which stands unchallenged in the record, that Anderson made the decision to pursue the prosecution of Eubanks on the charge of grand larceny, and that he did so without insistence or encouragement from GEO, it is nevertheless also clear that GEO initiated the criminal proceedings against plaintiff by executing the criminal affidavit

against him in the first place. It is true that the affidavit was prepared by Anderson, but in the court's opinion, that is not determinative. This is not a case in which GEO, through Johnson, merely cooperated in the investigator's independent decision to prosecute by signing the affidavit. Rather, it was Johnson, on behalf of GEO, who made his own initial investigation, who requested that the charges be brought, who presented the investigator with the evidence on which the affidavit was based, and who appeared before the justice court judge to secure a warrant for Eubanks' arrest. Accordingly, GEO is not entitled to summary judgment on this basis.

In the context of a malicious prosecution claim, "[p]robable cause requires the concurrence of (1) a subjective element–an honest belief in the guilt of the person accused, and (2) an objective element–reasonable grounds for such beliefs." Strong v. Nicholson, 580 So. 2d 1288, 1294 (Miss. 1991) (citing Benjamin v. Hooper Elec. Supply Co., 568 So. 2d 1182, 1190 (Miss. 1990)). Also, "[p]robable cause is determined from the facts apparent to the observer when the prosecution is initiated." Benjamin, 568 So. 2d at 1190. If probable cause existed for the initiation of criminal proceedings, a claim for malicious prosecution must fail. Coleman v. Smith, 914 So. 2d 807, 812 (Miss. Ct. App. 2005); Van v. Grand Casinos of Miss., Inc., 767 So. 2d 1014, 1020 (Miss. 2002)).

Plaintiff has admitted that he concealed medications in his lunch/tackle box and that he intended to take these medications out of the prison. Moreover, plaintiff has acknowledged that a reasonable person could have believed that he intended to steal the medications.[3] Thus the objective component of the probable cause inquiry is satisfied. Plaintiff submits, though, that defendant did not honestly believe that he intended to steal the medications and that there is at least a genuine issue of material fact as to whether, at the time it initiated the criminal proceedings against him, defendant honestly believed whether he intended to steal the medications in his lunchbox.

---

[3] In his response brief, plaintiff denies having given testimony to this effect. However, in his deposition, plaintiff testified as follows:
>    Q. Would you agree that it would be reasonable for a person to question you, why you were carrying medication outside of the prison?
>    A. Yes.
>    Q. You would agree that even a reasonable person could believe you were stealing this medication?
>    A. If they listened to an explanation, they would know I wasn't.
>    Q. All right. They would have to believe what you were saying, because you were the only one who knew what happened to the medication once it was outside of the prison walls?
>    A. That's correct.
>    Q. You would agree with me, wouldn't you, that it would be very easy to see how someone could mistake you for stealing medication? Would that be correct?
>    A. Identify someone.
>    Q. Anyone who learned of the circumstances of you carrying all of this medication outside of the prison.
>    A. They could.
>    Q. That would not be unreasonable, would it?
>    A. No.

Plaintiff claims that Sandra Atwood knew he did not intend to steal the medications and had not committed any crime. In fact, although Atwood has testified that she had no way to know what Eubanks' intentions were, it is undisputed that at the time of the incident, Atwood did not think Eubanks was stealing medication; she plainly stated in her deposition that she "honestly did not think he was stealing [the medications]." However, there is no evidence that Atwood had any involvement in the decision to bring charges against Eubanks. Nor is there any evidence that she expressed her opinion to anyone at any time before Eubanks was arrested.[4]

---

[4] On the date Eubanks was stopped and searched, Atwood prepared an "Unusual Occurrence Report" in which she reported that Eubanks' statement that he intended to bring the medications back. However, she did not state what she thought about his claim. A few days later, on November 3, 2003, <u>after</u> Johnson had already signed the affidavit for Eubanks' arrest, Atwood prepared a memorandum to the warden, reporting that she had contacted the State Board of Nursing to report the incident. In her report to the warden, Atwood did state that she had told the Nursing Board contact person that she did not think Eubanks intended to steal the medications. That memorandum was provided to the sheriff's investigator, along with the Unusual Occurrence Report, and a separate report of the incident, dated April 26, 2004, which she prepared for the sheriff's department at the request of Dennis Johnson, in which she reported only that Eubanks had said he was going to bring the medications back, and that there was no doubt that he had the medication in his possession with the intention of taking it out of the facility.

Defendant acknowledges that "[h]ypothetically, the Plaintiff could possibly have had cause for concern in this case if Nurse Atwood's (November 3, 2003) memorandum (in which she expressed her opinion as to Eubanks' innocence) was withheld from Investigator Anderson"; but it points out that the memo was not withheld. It was given to Investigator Anderson and in deciding whether to pursue an indictment, he "disregarded" it.

10

The only other basis for plaintiff's conclusion that defendant lacked an honest belief that he intended to steal the medications is a statement he claims was made by Dennis Johnson during a post-arrest interview of plaintiff by Investigator Anderson.  Plaintiff claims that during the interview, in which plaintiff had explained that his purpose was not to steal the medications but to bring them back to the prison so they could be given to prisoners, Johnson remarked to him, "If the warden had known about that, he would probably have congratulated you and taken you out to dinner for saving the corporation money." Plaintiff submits that this comment by Johnson demonstrates that Johnson, who signed the criminal affidavit which initiated the prosecution, knew he did not intend to steal the medication. However, the interview in which this alleged remark was made occurred <u>after</u> plaintiff's arrest, which occurred <u>after</u> Johnson executed the affidavit which caused his arrest.  There is no evidence that at the time he signed the affidavit, Johnson did not honestly believe that Eubanks had committed a crime.  Furthermore, there is no evidence that Johnson did anything to cause the continuation of criminal proceedings against Eubanks after he signed the affidavit for the arrest warrant.  Rather, the evidence establishes without challenge or contradiction that the decision to go forward with the charges and to present the case to the grand jury was made solely by Anderson, without input from Johnson

11

or anyone else with GEO.  In the court's opinion, the evidence presented by plaintiff is insufficient to support a reasonable finding that GEO did not honestly believe that plaintiff intended to steal the medication.  Thus, plaintiff has failed to demonstrate that defendant lacked probable cause for initiating his prosecution for theft of the medication.

While that entitles the defendant to summary judgment, the court also concludes that plaintiff's claim also fails for the absence of any competent proof of malice.  "In order to show malice as it pertains to a claim of malicious prosecution the plaintiff must show that 'the primary purpose of prosecuting is one other than 'bringing an offender to justice.'"  Hudson v. Palmer, 977 So. 2d 369, 381 (Miss. Ct. App. 2007) (internal quotations and citations omitted).  When asked whether he thought anyone at the prison had any personal reason for wanting to see him prosecuted, plaintiff responded, "Possibly Sandra Atwood." And when further asked why he thought Atwood would have wanted that, he stated he "always felt Sandra Atwood was threatened by [him]" because he had previously been a director of nursing and had more education than she; not only that, in his view, she was "not a nice person."[5]  However, plaintiff's subjective feeling or

---

[5] For her part, Atwood denied having any personal animosity toward Eubanks.  She testified that she thought he was a good employee, and that she had no interest in seeing him arrested or prosecuted.

12

belief that Atwood may have felt threatened by his education and experience is patently insufficient to warrant a finding of malice, particularly when there is no proof that Atwood had anything to do with the decision to pursue charges against him.[6] The only other person plaintiff identified as possibly having some sort of personal animosity against him and who might have wanted to see him arrested, indicted, prosecuted or sent to prison was David Ezell; but he conceded the problem with Ezell was a "personality thing" and that he did not know if Ezell was involved at all in any decision for charges to be made against him. Plaintiff has suggested no other basis for concluding that GEO instituted the prosecution for any purpose other than bringing an offender to justice. See Benjamin, 568 So. 2d at 1191.

For the foregoing reasons, it is ordered that defendant's motion for summary judgment is granted.

---

[6] As proof of malice, Eubanks also testified that Ruby Neal, another nurse at the facility, told him that she overheard Atwood tell "somebody in medical" that she knew Eubanks was not stealing medications, but that this was a good way to get rid of him. Atwood flatly denied having made any such statement. Plaintiff has not offered any testimony from Neal about this alleged statement by Atwood, but rather his own testimony about this alleged comment which Neal allegedly repeated to him. Such testimony is clearly inadmissible hearsay. See Warfield v. Byron, 436 F.3d 551, 559 (5th Cir. 2006) (noting that hearsay evidence is inadmissible for summary judgment purposes under Federal Rule of Civil Procedure 56).

13

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 14th day of July, 2008.

                                                /s/Tom S. Lee
                                                UNITED STATES DISTRICT JUDGE